## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. RANDALL W. ALLEN,<br><br>Plaintiff,<br>v.<br><br>1. THE TOWN OF COLCORD,<br>OKLAHOMA, an Oklahoma<br>municipal corporation,<br><br>2. THE BOARD OF TRUSTEES OF<br>THE TOWN OF COLCORD,<br>OKLAHOMA,<br><br>3. LENDEN WOODRUFF, Chief of<br>Police of the Town of Colcord,<br>Oklahoma, individually, and in<br>his official capacity,<br><br>4. DON BLAGG, Town of Colcord<br>Police Officer, individually, and in<br>his official capacity,<br><br>5. CARL DENNY, Trustee of Town<br>of Colcord, individually, and in<br>his official capacity, and<br><br>6. HENRY CREECH, Mayor of the<br>Town of Colcord, Oklahoma,<br>individually, and in his official<br>capacity,<br><br>Defendants. | Case No. 11-CV-680-JHP-PJC |

### OPINION AND ORDER

Before the Court are the Motion to Dismiss on Behalf of the Defendants, the Town of

Colcord and the Board of Trustees for the Town of Colcord (Motion to Dismiss I);[1] the Response

---

[1]Docket No. 13.

of Plaintiff to Motion to Dismiss on Behalf of the Defendants, The Town of Colcord and the Board

of Trustees for the Town of Colcord (Response I);[2] the Reply of Defendants', the Town of Colcord

and the Board of Trustees for the Town of Colcord, in Response to Plaintiff's Response to the

Defendants' Motion to Dismiss (Reply I); [3] the Motion to Dismiss on Behalf of Defendants Lenden

Woodruf, Don Blagg, Carl Denny, and Henry Creech (Motion to Dismiss II);[4] Response of Plaintiff

to Motion to Dismiss of the Defendants Woodruff, Blagg, Denny, and Creech (Response II);[5] and

the Reply of Defendants Lenden Woodruf, Don Blagg, Carl Denny, and Henry Creech, to the

Plaintiff's Response to the Defendants' Motion to Dismiss (Reply II).[6] For the reasons detailed

below, the Motion to Dismiss on Behalf of the Defendants, the Town of Colcord and the Board of

Trustees for the Town of Colcord is **GRANTED IN PART, DENIED IN PART**.[7] The Motion to

Dismiss on Behalf of Defendants Lenden Woodruf, Don Blagg, Carl Denny, and Henry Creech is

similarly **GRANTED IN PART, DENIED IN PART**.[8]

## BACKGROUND

On or about July 1, 2011, Plaintiff Randall Allen had been hired by the Town of Colcord,

Oklahoma (the Town) as an "Assistant to the Water Superintendent."[9] As such, Plaintiff was the

---

[2]Docket No. 19.

[3]Docket No. 23.

[4]Docket No. 15.

[5]Docket No. 20.

[6]Docket No. 24.

[7]Docket No. 13.

[8]Docket No. 15.

[9]Complaint at 3, Docket No. 2.

assistant to the acting Water Superintendent, James Stanley.[10] As Superintendent, Stanley was tasked with taking monthly samples of the Town's drinking water in order to provide reports to the Oklahoma Department of Environmental Quality (ODEQ) as to whether or not the Town's drinking water meets health standards with regard to specific contaminants.[11] Individuals tasked with taking water samples must be certified by the ODEQ, and Mr. Stanley had this qualification.[12] At the time of his hire and throughout July 2011, Plaintiff did not possess this certification.[13]

On August 18, 2011, ODEQ sent written notice to the Town that samples had not been taken for July 2011.[14]  On August 19, 2011, both Plaintiff and Mr. Stanley tendered their resignations to the City Council.[15] On August 22, 2011, Defendant Woodruff, the Town's Chief of Police, executed a probable cause affidavit alleging both Plaintiff and Mr. Stanley violated 21 Oklahoma State title §581, Willful Omission of Duty by a Public Officer, a misdemeanor.[16] The narrative of the report providing the factual basis for probable cause states "Suspects Stanley and Allen failed to take required water samples for the month of July 2011.[17]

---

[10]*Id.*

[11]*Id.* at 4.

[12]*Id.*

[13]*Id.*

[14]*See id.* at Exhibit 4, p. 1.

[15]*See id.* at Exhibit 1.

[16]*See id.* at Exhibit 2. *See also* 21 Okla.Stat. tit. §581 ("Where any duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, every willful omission to perform such duty where no special provision shall have been made for the punishment of such delinquency, is punishable as a misdemeanor").

[17]*See id.*

On September 7, 2011, the Town's Municipal Judge Jason David Smith executed arrest warrants for Plaintiff and Mr. Stanley.[18] The warrants were issued On September 8, 2011, Defendant Woodruff, accompanied by Defendant Don Blagg, a Town police officer, arrived at Plaintiffs home and arrested him on the warrant.[19] The Defendant officers then transported Plaintiff to the Adair County Jail in Stillwell, Oklahoma, where he remained until posting bond.[20] The charges were ultimately dismissed by the Town's Municipal Court Judge on October 28, 2011.[21]

Plaintiff alleges that the arrest was without jurisdiction or probable cause and was in retaliation for multiple instances where Plaintiff and his family had vocally challenged the decisions and actions of Mayor Henry Creech and the Board of Trustees (the Board).[22] Plaintiff specifically alleges violations of his civil rights under the First, Fourth, and Fourteenth Amendments to the Constitution as against Defendants Woodruff, Creech, Blagg, and Denny.[23] Further, Plaintiff alleges that these violations were the result of the Town and Board of Trustee's "unconstitutional policy and procedure to retaliate, harass, and abuse" citizens who spoke out about the operation of the Town.[24] Plaintiff also brings claims under Oklahoma law for False Arrest and False Imprisonment, Malicious Prosecution, Intentional Infliction of Emotional Distress, Abuse of Process, Assault, and includes

---

[18]*Id.* at Exhibit 3.

[19]*Id.* at 5.

[20]*Id.* at 5-6.

[21]*Id.* at 12.

[22]*Id.* at 6, 8.

[23]*Id.* at 10.

[24]*Id.*

4

a claim for Punitive Damages.[25]

The Town and the Board argue that "Plaintiff's Complaint fails to establish that the Town's Municipal Court was without jurisdiction to prosecute him for the offense of willful omission to perform duty by a public officer, fails to demonstrate an absence of probable cause to issue the warrant for his arrest, and fails to show that his arrest was in direct retaliation for speaking out against the Town, the Court should dismiss the Defendants from the instant case."[26] The Town also claims Plaintiff has not pled sufficient facts to demonstrate policy or procedure that warrants municipal liability.[27] Defendants Woodruff, Creech, Blagg, and Denny expressly incorporate all of the Town and Board's arguments, further raising arguments of legislative immunity for Defendants Creech and Denny and qualified immunity as to all four Defendants.[28]

## DISCUSSION

To survive Defendants' motion to dismiss, Plaintiff's complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[29]  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[30] The *Twombly*/*Iqbal* standard does not

---

[25]*Id.* at 11-14.

[26]Brief on Motion to Dismiss I, at 9 Docket No. 14.

[27]*Id.* at 23.

[28]*See* Reply II at 2, Docket No. 24; Brief on Motion to Dismiss II at 10-11, Docket No. 16.

[29]*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[30]*Iqbal*, 556 U.S. at 678.

require heightened fact pleading, it merely requires the complaint to contain enough facts to state a claim for relief that is plausible on its face.[31]

The standard *does not* require that a plaintiff establish a *prima facie* case in his Complaint, merely that the facts alleged nudge a plaintiff's claims across the line from conceivable to plausible.[32] A claim has facial plausibility when the pleaded facts, accepted as true, allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[33] Plausibility is not a watchword for probability, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."[34]

Finally, this Court emphasizes that even after *Twombly* and *Iqbal*, granting a defendant's motion to dismiss is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."[35] Looking to Plaintiff's recitation of the facts, assuming their veracity, and proceeding cautiously in the interests of justice, the Court now assesses the plausibility of each of Plaintiff's causes of action.

## A. §1983 Claims

In his first cause of action, Plaintiff alleges that Woodruff, Blagg, Denny, and Creech, each

---

[31]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 563 127 S.Ct. 1955, 1965-66, 167 L.Ed.2d 929 (2007).

[32]*See Khalik v. United Air Lines*, 671 F.3d 1188, 1191-92 (10thCir.2012)

[33]*Jordan–Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir.2011).

[34]*See Twombly*, 550 U.S. at 556 (*internal quotation omitted*).

[35]*Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir.2009) (*internal quotation omitted*).

acting individually and under color of law deprived Plaintiff of his Constitutional rights under the First, Fourth, and Fourteenth amendments to the Constitution.[36] He specifically cites the right to be free to speak out on matters of public interest without retaliation and to be free from unreasonable seizures and arrests without due process of law.[37] The Defendants all offer multiple arguments as to why these claims should be dismissed, including Plaintiff's failure to plead facts supporting municipal liability and facial attacks on the plausibility of Plaintiff's claims. The Court examines each of these issues in turn.

1. Municipal Liability

In examining Plaintiff's §1983 claims against the Town and the Board, the Court looks first to see if Plaintiff has pled enough facts to invoke municipal liability. To maintain a claim for municipal liability under §1983, a plaintiff must allege facts demonstrating that he suffered a constitutional deprivation resulting from an established policy, a longstanding practice or custom, or the conduct or decision of a final policymaker for the municipality.[38] Therefore, a claim for municipal liability under §1983 can withstand a 12(b)(6) motion if it alleges that the constitutional deprivation complained of resulted from an established policy or custom, or that a final policymaker (1) took unconstitutional action or (2) approved the allegedly unconstitutional conduct at issue, or (3) that the conduct occurred pursuant to a decision made by a policymaker.[39]

Here, Plaintiff alleges both (1) that his allegedly unconstitutional arrest was the direct result

---

[36]*See* Complaint at 8, Docket No. 2.

[37]*Id.*

[38]*See, e.g., Moss v. Kopp*, 559 F.3d 1155, 1168-69 (l0th Cir.2009).

[39]*See id.* at 1169.

of the Town's practice or policy of retaliation, harassment, and abuse toward citizens who spoke out about the Town's operation and (2) that Defendants Creech and Denny, acting as the Board, at a minimum both knew and approved the Defendant Officer's conduct surrounding the charging and arrest of Plaintiff.[40]

In the first allegation, Plaintiff alleges a repeated practice of harassment in retaliation for speaking out against the Town, and that this practice resulted in his unconstitutional arrest and detention. This is more than a bald accusation of some indefinite policy or practice, it specifically alleges a custom practiced by the municipal Defendants of retaliating against those that vocally oppose them and a Constitutional violation that resulted from this practice. This allegation alone is sufficient to defeat a 12(b)(6) motion based on municipal liability.

But Plaintiff offers more. Assuming, *arguendo*, that Defendant Board, including Defendants Creech and Denny, has final policymaking authority with regard to municipal prosecutions, the second allegation, if taken as true, also supports a finding that the Board, as policymakers for the City, approved the Defendant Officers' conduct and caused Plaintiff to be unconstitutionally arrested and prosecuted unlawfully. Defendants appear to ask the Court to require Plaintiff to provide some proof that this policy existed. Such a requirement is inappropriate at this stage of the litigation. Assuming Plaintiff's allegations are true, either of these allegations are sufficient to maintain a municipal liability action.

2. Plausibility

In addition to arguments that Plaintiff fails to properly allege a claim for municipal liability, all Defendants allege Plaintiff has not pled facts sufficient to allege Constitutional violations under

---

[40]*See* Complaint at 9-10, Docket No. 2.

the First and Fourth Amendments for which recovery is plausible. Defendants specifically argue that Plaintiff has not shown (1) that the Town's Municipal Court lacked jurisdiction, (2) that the arrest warrant lacked probable cause, and (3) that Plaintiff's complaint fails to set forth facts necessary to support a claim of retaliation.[41]

*i. Fourth Amendment Claim*

Defendants first argue that Plaintiff's Complaint fails to demonstrate that the Town's municipal court lacked jurisdiction to hear and prosecute Plaintiff for violation of 21 Oklahoma State title, §581.[42] The Court first takes issue with Defendant's position that Plaintiff need *demonstrate* that the municipal court was without jurisdiction at the pleading stage of this litigation. Plaintiff need only allege facts sufficient for this Court to make a reasonable inference that the municipal court was without jurisdiction, and his arrest was therefore wrongful.

Plaintiff's allegation, that the municipal court lacked jurisdiction to prosecute him for the crime charged, is sufficiently supported in the Complaint by both factual averments and legal argument. As stated in Plaintiff's Complaint, the Oklahoma Constitution clearly sets out the jurisdiction of municipal courts, whether of record or not of record:

> Municipal Courts in cities or incorporated towns shall continue in effect and shall be subject to creation, abolition or alteration by the Legislature by general laws, but shall be limited in jurisdiction to criminal and traffic proceedings *arising out of infractions of the provisions of ordinances of cities and towns or of duly adopted regulations authorized by such ordinances.*[43]

Based on this Constitutional language, Plaintiff alleges that the crime for which he is

---

[41]*See* Brief on Motion to Dismiss I at 7, Docket No. 14; Reply II at 2, Docket No. 24.

[42]*See id.* at 10.

[43]Okla. Const. art. VII, §1 (*emphasis added*).

charged, 21 Oklahoma State title §581, was not a municipal ordinance at the time of his arrest, therefore the municipal court was without jurisdiction to issue a warrant for his arrest and prosecute him.[44]  Defendants argue that municipalities may enact ordinances and regulations not inconsistent with the Constitution and laws of Oklahoma and that "nowhere in Plaintiff's Complaint is there any allegation that the Town had not adopted a municipal ordinance penalizing the criminal misdemeanor offense contained in 21 O.S. §581."[45]

However, that is exactly what Plaintiff alleges in his Complaint by stating Defendants prosecuted Plaintiff under a state statute rather than a duly enacted municipal ordinance as required by the Oklahoma Constitution. Although Plaintiff's Complaint does not include the express phrase "the Town did not have an ordinance," it does state that "[s]ection 581 is a state statute and *not an ordinance of the Town of Colcord*."[46]  By stating §581 is not a Town ordinance, Plaintiff is effectively alleging there was no ordinance.

Other facts alleged by Plaintiff support his allegation that the Town did not have an ordinance. For instance, Plaintiff alleges, and provides proof,  that the probable cause affidavit both referenced the statute rather than an existing municipal ordinance.[47]  The actual warrant, issued two weeks later and evidencing that the Town was pursuing this as a municipal action, also cited the state statute rather than an existing municipal ordinance.[48] Further support comes from Plaintiff's

---

[44]Complaint at 6, Docket No. 2.

[45]Brief on Motion to Dismiss I at 9, 11, Docket No. 14.

[46]*See* Complaint at 6, Docket No. 2 (*emphasis added*).

[47]*Id*.

[48]*Id.* at 20.

10

allegation that Defendant Woodruff informed Defendant that the ODEQ was initiating the charges, rather than the Town.[49]

The issue of whether or not a municipal ordinance existed at the time the charges were instituted is one of fact, to be decided by the finder of fact. The Court finds it telling that Defendants do not argue that a municipal ordinance actually existed, rather, Defendants apparently argue that a municipal ordinance could have existed and Plaintiff has failed to *demonstrate* that one did not.[50] This argument is disingenuous and wholly misstates Plaintiff's burden at the pleading stage of the litigation.

It is the opinion of the Oklahoma Attorney General that "[b]oth municipal courts of record and municipal courts not of record have jurisdiction to hear only those cases and controversies that involve municipal ordinances."[51] Further, under Oklahoma law "[n]o ordinance having any subject other than the appropriation of monies shall be in force unless published or posted within fifteen (15) days after its passage."[52] Plaintiff pleads sufficient facts to allege there was no posted municipal ordinance in place at the time of his arrest. Taken as true, these facts support a reasonable inference that the Town and Board, including Defendants Creech and Denny, lacked jurisdiction to prosecute Plaintiff under 21 Oklahoma State title, §581. If Plaintiff's allegation that the municipal court lacked

---

[49]*Id.* at 10.

[50]Brief on Motion to Dismiss I at 9, 11, Docket No. 14 (stating "Plaintiff's assumption fails to appreciate the practical reality that many small town Municipalities adopt penal ordinances with specific and express references to the State statutory offenses upon which the Municipal ordinance offense is based"). Defendants freely claim they are permitted by law to enact such an ordinance, which is undisputed. However, the Court finds it suspect that nowhere in their Motion argument does the Town actually claim an ordinance was enacted.

[51]2005 OK AG 1, ¶8.

[52]11 Okla. Stat. tit., §14-106.

jurisdiction to issue the arrest warrant is taken as true, other facts pled support an inference that Officers Woodruff and Blagg acted in concert with the abovementioned Defendants in effecting Plaintiff's allegedly unlawful arrest without jurisdiction.[53]

Defendants also argue that Plaintiff fails to plead facts supporting his allegation that the Defendants lacked probable cause for his charging and arrest.  In his Complaint, Plaintiff alleges that the statute under which he was charged, 21 Oklahoma State title, §581, Willful Omission of Duty by a Public Officer, has a heightened definition of "willful" that requires "bad or evil intent."[54] Plaintiff further alleges that the probable cause affidavit supporting this affidavit failed to allege "bad

or evil intent" and was therefore flawed.[55] Plaintiff's assertion in this regard is incorrect.

The statute under which Plaintiff was charged is a criminal misdemeanor that lacks internal definitions,[56] and therefore uses the definition of "willful" used by similar Oklahoma criminal statutes, the definition at 21 Oklahoma State title, §92.[57] Plaintiff attempts to invoke the definition

---

[53]*See* Complaint at 9, ¶¶ 32-33, Docket No. 2.

[54]Complaint at 8, Docket No. 2.

[55]*Id.*

[56]*See* 21 Okla. Stat. tit., §581.

[57]*See* 21 Okla. Stat. tit., §92 ("The term "willfully" when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage"); *Cf. Shields v. State*, (distinguishing criminal definition of "willful" at 21 Okla. Stat. tit. §92 from the definition of "willful" used in civil proceedings to remove an officer as discussed in *Kendall and Phillips*).

of "willful" as used in actions to remove officers.[58] As Plaintiff was charged with a crime, that definition is not applicable in this case. If this were Plaintiff's only allegation regarding the lack of probable cause, he would fail to state a claim for relief upon which recovery would be plausible.

However, review of Plaintiff's entire complaint reveals further factual allegations that create plausible grounds for success. In the factual statement preceding his recitation of the causes of action, Plaintiff also tacitly alleges he was unqualified to take the sample at the time the required sample was due and therefore not under a duty as required by the statute.[59] Based on these factual allegations, whether or not Plaintiff had a duty to take the sample is a question of fact. Taking Plaintiff's allegations as true, if he was unqualified, then he was likely under no duty, and Defendants had no probable cause to charge or arrest him under the statute.

Plaintiff's alleged facts, taken as true, support a reasonable inference that the municipal Defendants, including Creech and Denny, lacked both jurisdiction and probable cause to issue an arrest warrant for Plaintiff and that the officer Defendants lacked probable cause to arrest Plaintiff for violation of 21 Oklahoma State title, §581, Willful Omission of Duty by Public Officer. Consequently, Defendants' Motions to Dismiss Plaintiff's Complaint with regard to Plaintiff's Fourth Amendment claims pursuant to §1983 is **DENIED**.

*ii. First Amendment Retaliation*

---

[58]*See* Complaint at 8, Docket No. 2 (*citing Okla. Pub. Co. V. Kendall*, 1923 OK 999, ¶12, 221 P. 762, 765 (*citing Phillips v. State*, 1919 OK. 168, ¶¶7-8, 181 P. 713).

[59]Complaint at 4, Docket No. 2 ("Regulations require persons taking such samples be certified by the ODEQ." "During the month of July 2011 Plaintiff did not hold a permanent [ ]license as did Superintendent Stanley"). *See also*, Response I at 8, Docket No. 19 ("Defendants Creech, Denny, and Woodruff were well aware that during the month of July Plaintiff was not responsible for taking a water sample. Indeed, at that time Plaintiff was training under Water Superintendent Stanley, and only Mr. Stanley held a permanent license to take such samples").

Defendants claim that Plaintiff fails to show that his arrest was in direct retaliation for his protected speech. In doing so, Defendants make much ado about Plaintiff's frequent reference to Plaintiff's September 7, 2011 call to the town clerk requesting he be placed on the agenda for the next town meeting. Defendants argue that Plaintiff's retaliation claims are undermined because this call took place after the probable cause affidavit was sworn out, therefore the charges could not have been in retaliation for Plaintiff's protected speech.[60] However, the Complaint clearly alleges that both Plaintiff and his family had spoken out about issues concerning the town's operation before his call to the clerk, and further alleges Defendants were aware of this speech and disapproved of it.[61]

The Court recognizes Plaintiff's Complaint states a belief that the conspiracy to have Plaintiff arrested began on September 7, 2011. However, this claim does not undermine Plaintiff's allegations, as the allegation that Plaintiff was wrongly charged and the allegation he was wrongfully arrested are distinct events. The allegation that Plaintiff was transported to a distant county jail supports a reasonable inference that the actual arrest was distinct from the charging decision and used specifically to prevent further disfavored speech.[62]

The facts alleged in Plaintiff's Complaint, taken as true, support an inference that Plaintiff was wrongfully charged in retaliation for speaking out, and when his speaking out was set to occur at a town hall meeting, he was then wrongfully arrested on that charge. In sum, Plaintiff alleges that he exercised his First Amendment right to political speech regarding town policies and as a result

---

[60]*See, e.g.,* Reply II at 4, Docket No. 24.

[61]*See* Complaint at 8-9, ¶¶ 31-32, Docket No. 2.

[62]*See* Complaint at 5, Docket No. 2.

14

was punished by arrest and imprisonment. He furthers alleges that the arrest and imprisonment was consistent with a policy of the Town and/or Board of squelching dissent and that this policy was approved of and implemented by Defendants Woodruff, Blagg, Denny, and Creech. These allegations, taken as true, indicate that recovery on the issue of First Amendment retaliation is plausible.[63] Consequently, Defendants' Motions to Dismiss Plaintiff's Complaint with regard to Plaintiff's First Amendment claims pursuant to §1983 is **DENIED**.

## B. Plaintiff's Tort Claims

In addition to his claims under §1983, Plaintiff brings multiple Oklahoma state law tort claims. Defendants' Motions focus on Plaintiff's overall factual basis and the §1983 claims, but broadly state "Plaintiff's Complaint fails to state a facially plausible claim upon which relief may be granted."[64] Although the Court has largely rejected the basis for this broad claim, Defendant claims Plaintiff has failed to state any claim for which relief can be granted, therefore the Court will now examine each of Plaintiff's remaining claims.

All tort claims against the state or its subdivisions must be brought pursuant to the Oklahoma Governmental Tort Claims Act (OGTCA), pursuant to the State's waiver of sovereign immunity in that Act.[65] Pertinent to this litigation, the OGCTA defines "political subdivisions" as: "a

---

[63]Defendants also point to the fact that Mr. Stanley was arrested on the same charges, despite not speaking out, in support of argument that Plaintiff has failed to show retaliation. *See, e.g.* Reply II at 5, Docket no. 24. This information is appropriately weighed by the finder of fact, and is certainly not dispositive on a motion to dismiss.

[64]Brief on Motion to Dismiss I at 8, Docket No. 14.

[65]See Okla. Stat. tit. 51 § 152.1(A) ("The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The State, its political subdivision, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts"); *Fuller v. Odom*, 1987 OK 64, ¶¶ 3-4, 741 P.2d 449. *See also* Okla. Stat. tit. 51, § 153(B).

municipality" and "a public trust where the sole beneficiary or beneficiaries are a city, town, school district or county."[66] The OGTCA does not allow an individual employee acting within the scope of his employment to be named in any suit brought under the Act, therefore tort claims against state subdivisions must generally be brought against the municipality directly.[67]

For purposes of Plaintiff's tort claims, the Town appears to be the appropriately named party under the OGCTA. Defendants Woodruff, Blagg, Denny, and Creech, if acting within the scope of their employment, are entitled to immunity under the OGCTA from these claims. The OGTCA defines "scope of employment" as "performance by an employee acting in good faith within the duties" of his employment.[68] Based on the facts alleged, whether or not Defendants Woodruff, Blagg, Denny, and Creech were acting in good faith and within the scope of their duties at the time of the alleged acts is a question of fact, not suitable for determination at this stage of the litigation.[69] Therefore these claims are not subject to dismissal based on the immunity provisions of the OGCTA. The Court now reviews the plausibility of Plaintiff's tort clams.

1. False Arrest/False Imprisonment

Claims for false arrest and false imprisonment are virtually indistinguishable under

---

[66]Okla. Stat. tit. 51 §152(11)(a) and (d).

[67]Okla. Stat. tit. 51 §163(C) ("In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as a defendant").

[68]*Id. at* § 152(12).

[69]If the Defendants are found to be acting outside the scope of their duties, they would be liable only in their individual capacities. *See, e.g, Houston v. Reich*, 932 F.2d 883, 890 (10th Cir.1991) (holding in §1983 action individuals found to be acting outside scope of authority forfeit OGCTA immunity, city remains immune).

Oklahoma law, the only distinction being the nature of the person doing the detaining.[70]  If the person is purportedly acting with the authority of law, the tort is false arrest, otherwise, it is false imprisonment.[71] Here, Plaintiff alleges he was improperly detained by law enforcement officers, therefore the claim is more properly analyzed as a false arrest claim.[72]

Oklahoma Courts have defined false arrest as:

> "an unlawful restraint of an individual's personal liberty or freedom of locomotion. . . . An arrest without proper legal authority is a false arrest and because an arrest restrains the liberty of a person it is also a false imprisonment."[73] Black's Law Dictionary (5th Ed.1979).

Oklahoma Courts have held  that an arrest without probable cause is a false arrest, therefore in an action for false arrest, a plaintiff has the burden of proving lack of probable cause.[74] As such, to defeat a motion to dismiss Plaintiff's claim for false arrest, Plaintiff need only allege that his liberty or freedom of locomotion was restrained without probable cause. Here, Plaintiff alleges he was handcuffed and driven to the Adair county jail on the basis of an arrest warrant issued without either jurisdiction or probable cause. Accepted as true, these allegations are sufficient to maintain an action for false arrest.

## 2. Malicious Prosecution

It is unclear whether Plaintiff brings his claim for malicious prosecution under Oklahoma

---

[70]*See Alsup v. Skaggs Drug Center*, 1949 OK 136, ¶ 7, 223 P.2d 530, 533.

[71]*Id.*

[72]*See Delong v. State, ex rel. Okla. Dept. of Pub. Safety*, 1998 OK CIV APP 32, ¶4, 956 P.2d 937, 938.

[73]*Roberts v. Goodner's Wholesale Foods, Inc.*, 2002 OK CIV APP 73, ¶ 6, 50 P.3d 1149, 1151 -52 (*citing* Black's Law Dictionary (5th Ed.1979)).

[74]*Id.*

law or §1983.[75]  Regardless, Plaintiff fails to plead enough facts under either standard to make relief

plausible. For a claim of malicious prosecution to lie under Oklahoma law, the suit giving rise to the

claim must terminate in the malicious prosecution claimant's favor.[76] Further, a "[d]ismissal without

prejudice is not a termination favorable to the malicious prosecution plaintiff."[77]

Similarly, a federal malicious prosecution claim under § 1983 requires termination of a prior

criminal proceeding in favor of the accused.[78] A termination in favor of the accused includes, but

is not limited to, an acquittal, reversal of conviction, or similar event.[79] In any event, a cause of

action for malicious prosecution does not lie so long as a defendant remains subject to the charges.[80]

In his Complaint, Defendant alleges only that "the Judge of the Town of Colcord Municipal

Court dismissed the charges against Plaintiff, and therefore that action was terminated in Plaintiff's

favor."[81] In order to state a plausible claim for relief Plaintiff must allege, at a minimum, that he is

no longer subject to the charges.

---

[75]Plaintiff cites "Malicious Prosecution" as his fifth cause of action, separate from his combined  §1983 claims, and without mention of §1983. However, Plaintiff makes reference to malicious prosecution under §1983 in his pleadings. *See* Response I at 10, Docket No. 19 ("In respect to Plaintiff's claims of malicious prosecution, under section 1983 when the claim is under the Fourth Amendment").

[76]*Greenberg v.Wolfberg*, 1994 OK 147, ¶ 20, 890 P.2d 895, 903, 904.

[77]*Id.*

[78]*Heck v. Humphrey*, 512 U.S. 477, 484-85, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994).

[79]*See Robinson v. Maruffi*, 895 F.2d 649, 654-55 (1990).

[80]*Id.* at 655 (statute of limitations for malicious prosecution did not accrue because defendant remained subject to serious charges).

[81]Complaint at 12, Docket No. 2.

In his Complaint, Plaintiff states only that the charges were "dismissed." Because part of Plaintiff's argument for the unlawful arrest centers on the town's lack of jurisdiction, without a detailed statement as to the disposition of the case, the Court cannot foreclose the notion that Plaintiff may still be subject to charges properly brought in Delaware County District Court.[82] Because of the stringent requirements for maintaining a malicious prosecution cause of action, the Court cannot reasonably infer from Plaintiff's Complaint alone that relief is plausible. Defendants' Motion to Dismiss with respect to Plaintiff's third cause of action for malicious prosecution as against all Defendants is **GRANTED**. This claim is **DISMISSED WITHOUT PREJUDICE**.

3. Intentional Infliction of Emotional Distress

Under Oklahoma law, intentional infliction of emotional distress (IIED) is a tort.[83] "As a threshold matter, the trial court should determine as a matter of law whether the conduct at issue reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress."[84] "When reasonable persons may differ on that question, it is for the jury to decide, subject to the oversight of the court."[85]

---

[82]*Cf. Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1214 (10th Cir.2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice").

[83]*Cf. Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 734 (Okla. 2002) ("Oklahoma first adopted the tort of intentional infliction of emotional distress, also known as the tort of outrage, in *Breeden v. League Services Corp.*, 1978 OK 27, 575 P.2d 1374").

[84]*Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1222 (10th Cir.2007) (internal citations omitted). The New Mexico law of IIED cited in *Alvarado* follows the Restatement (Second) of Torts § 46, as does Oklahoma. *See Computer Publications, Inc. v. Welton* 49 P.3d 732, 734 (Okla. 2002) ("The tort [of IIED] is governed by the narrow standards of the Restatement (Second) of Torts § 46").

[85]*Id.*

Here, Plaintiff alleges that he was arrested on trumped up charges as punishment for voicing his opinion about the operation of his town, taken to a distant jail, and forced to expend time and resources defending himself against a crime for which there was allegedly no jurisdiction or probable cause, all the while suffering embarrassment and ridicule. The Court finds that reasonable minds could certainly differ as to whether or not this rises to the level of outrageousness required to maintain a claim for IIED. Consequently, any attempt by Defendants to dismiss Plaintiff's IIED claim are **DENIED**

4. Abuse of Process

Plaintiff's fifth cause of action is for abuse of process under Oklahoma law. Regardless of the application of the OGCTA, Plaintiff's Complaint fails to state a plausible claim for abuse of process. Under Oklahoma law, an abuse of process claim requires a showing of three elements: "(1) issuance of process; (2) an ulterior purpose; and (3) a willful act in the use of process not proper in the regular conduct of the proceeding."[86] To establish the element of improper use of process, a plaintiff must show some *definite act or threat* by the defendant not authorized by the process.[87] Merely showing a defendant carried out the process to its authorized conclusion, even with bad intentions, is insufficient to establish an abuse of process claim.[88]

In *Meyers v. Ideal Basic Industries, Inc*, the Tenth Circuit upheld a district court dismissal of a plaintiff's abuse of process claim.[89] It found that, although the defendant had the ulterior and

---

[86]*Meyers*, 940 F.2d 1379 (10th Cir. 1991) (applying Oklahoma law).

[87]*Id.* at 1382 (emphasis in original).

[88]*Id.* (internal citations omitted).

[89]*Id.*

unlawful purpose of intimidating workers into abandoning legitimate claims when it brought the action, the plaintiff still failed to establish an abuse of process claim because there was no allegation of some definite action or threat by the defendant.[90]

As in *Meyers*, the Court presumes as true Plaintiff's allegation that Defendants had an ulterior or improper purpose in bringing the action. Even so, Plaintiff's Complaint offers no allegation of definite action or threat by any Defendant other than the institution and prosecution of the process itself. Without such an allegation, relief on this cause of action is not plausible. With regard to Plaintiff's fifth cause of action for abuse of process as against all Defendants, Defendants' Motions to Dismiss are **GRANTED**, this claim is **DISMISSED WITHOUT PREJUDICE.**

5. Assault

Plaintiff's sixth cause of action is for common law assault based on the events surrounding his arrest. If during the arrest the Defendant Officers were acting within the scope of their employment, the Town and Board will be liable for any torts committed during the arrest, subject to exemptions. If the Defendant Officers were acting outside the scope of their employment, they may be liable individually.

Oklahoma has adopted the view of the Second Restatement of Torts with regard to common law assault.[91] The Restatement reads in pertinent part:

(1) An actor is subject to liability to another for assault if

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

---

[90]*Id.* at 1382-83.

[91]*See, e.g., Brown v. Ford*, 1995 OK 101, 905 P.2d 223, 229 (*overruled on other grounds by Smith v. Pioneer Masonry, Inc.*, 2009 OK 82, 226 P.3d 687).

21

(b) the other is thereby put in such imminent apprehension.

(2) An action which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for an apprehension caused thereby although the act involves an unreasonable risk of causing it and, therefore, would be negligent or reckless if the risk threatened bodily harm.[92]

Under 21 Oklahoma State title §643, a police officer has a general privilege to use reasonable force in making an arrest, which is sometimes conceptualized as qualified immunity.[93] The privilege of §643 affords a defense to civil claims for assault and battery.[94] This privilege does not bar suit *ab initio*, the privilege merely provides a defense to liability.  This defense is available to the Town by virtue of OGTCA §155(16)'s catchall exemption.[95]

The defense provided by §643 in pertinent part reads:

To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases:

1. When necessarily committed by a public officer in the performance of any legal duty, or by any other person assisting such officer or acting by such officer's direction;

Therefore to plead a cause of action for assault for which recovery is plausible, Plaintiff must allege that the Defendant Officers acted with the intent to cause harmful contact, that the intent to cause harmful contact put Plaintiff in imminent apprehension, and must further allege that the

---

[92]*Id.* (*citing* Restatement (Second) of Torts §21).

[93]*Morales v. City of Okla. City, ex rel. Okla. City Police Dept.*, 2010 OK 9, ¶19, 230 P.3d 869, 877-78.

[94]*Id.*

[95]*Id.*; Okla. Stat. tit., 51 §155(16) (" The state or a political subdivision shall not be liable if a loss or claim results from: . . . 16. Any claim which is limited or barred by any other law"). *See also* Okla. Stat. tit., 51 §155(3) (exemption provided for claims resulting from the "[e]xecution or enforcement of the lawful orders of any court").

Defendant Officers did so without lawful authority. Here, Plaintiff alleges that the Defendant Officers seized, handcuffed, and placed Plaintiff in a Police car based upon an arrest warrant that the Defendant Officers knew was unlawful because it lacked both jurisdiction and probable cause. Taken as true, these facts alleged support a claim for assault for which recovery is plausible.

## G. Immunity Issues

In their Motion to Dismiss, Defendants Creech and Denny claim legislative immunity, alleging that all the actions alleged by Plaintiff were taken "in the sphere of legitimate legislative activity."[96] Defendants Woodruff, Blagg, Denny, and Creech also claim they are entitled to qualified immunity.[97] Plaintiff responds first by stating that Defendants Creech and Denny have not been sued for any acts performed in their legislative capacity, and Defendants Creech and Denny do not dispute this in their reply.[98] Plaintiff further states that none of the Defendants are entitled to qualified immunity as they all violated clearly established Constitutional law.[99]

The Court concurs with Plaintiff's assertion that none of the causes of action alleged in Plaintiff's Complaint pertain to actions by Defendants Creech and Denny performed in the sphere of legitimate legislative activity. Plaintiff is not bringing the action because the Defendants failed to pass an ordinance, he brings the action because he alleges the Defendants acted without jurisdiction or probable cause in order to effectuate an arrest of Plaintiff in retaliation for Plaintiff's political speech. These allegations, taken as true, are not even adjacent to the sphere of legitimate

---

[96]See Brief on Motion to Dismiss II at 9, Docket No. 16 (*citing Bogan v. Scott-Harris*, 523 U.S. 44, 49, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998).

[97]*Id.* at 11.

[98]*See* Response II at 5, Docket No. 20.

[99]*Id.* at 10.

23

legislative activity, therefore Defendants Creech and Denny's proffer of legislative immunity is **DENIED**.

Qualified immunity exists "to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'"[100] "This *does not mean* that complaints in cases subject to qualified immunity defenses must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law."[101] To nudge their claims across the line from conceivable to plausible in the qualified immunity context, a plaintiff must allege facts, if assumed to be true, that are sufficient to show that the defendants violated a plaintiff's constitutional rights, and that those rights were clearly established at the time.[102] This requires enough allegations to give the defendants notice of the theory under which their claim is made.[103]

Here Plaintiff makes particularized allegations of Constitutional and statutory violations against each of the Defendants. Plaintiff alleges that Defendant Woodruff "misrepresented the legality of his authority, [and] arrested Plaintiff without probable cause and in retaliation for" Plaintiff's protected speech.[104] Plaintiff further alleges Defendant Blagg both knowingly signed an unlawful warrant and knowingly participated in Plaintiff's unlawful arrest.[105] Plaintiff also alleges

---

[100]*Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10thCir.2008). (*citing Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

[101]*Id.* (*citation ommitted*) (*emphasis added*).

[102]*Id.*

[103]*Id.* (*internal quotation and citation ommitted*).

[104]Complaint at 9, Docket No. 2.

[105]*Id.* at 5.

24

that Defendant's Creech and Denny knowingly and without authority presented facially invalid charges and sought an invalid and unlawful warrant for Plaintiff's arrest in retaliation for Plaintiff's public speech.[106] All of these specific allegations are further supported by factual averments as to the time and place these alleged acts occurred.

These allegations, assumed to be true and specific to each of the Defendants, assert Constitutional violations of Plaintiff's clearly established rights under the First and Fourth Amendments, as well as under Oklahoma law. If the Court believes Plaintiff's assertions as to the knowing acts of the Defendants and the policy of retribution, and it must for the purposes of 12(b)(6), the Court must also find that Defendants were well aware their actions against Plaintiff were unconstitutional, and therefore the rights allegedly violated were clearly established.

Defendants also offer argument that they are entitled to qualified immunity because the law was not clearly established that municipal courts could not prosecute under the instant statute.[107] This is refuted by both Oklahoma law and Plaintiff's Complaint. Oklahoma law clearly permits the Town to prosecute similar violations, but only under duly enacted municipal ordinances. Officials of reasonable competence would not disagree on this issue.[108]  Plaintiff's Complaint clearly alleges facts that support a reasonable inference that they did not duly enact such an ordinance. Defendants' argument here is without merit.

Reviewing Defendants' argument that they are entitled to qualified immunity because they

---

[106]*Id.* at 9

[107]*See* Brief on Motion to Dismiss II at 13, Docket No. 16.

[108]*See Weigel v. Broad*, 544 F.3d 1143, 1157 (10th Cir.2008) ("[I]f officers of reasonable competence could disagree about the lawfulness of the challenged conduct, qualified immunity should be recognized.") (*internal quotation omitted*).

reasonably believed their actions in charging, arresting, and prosecuting Plaintiff to be lawful, the Court finds that Plaintiff's allegations specifically refute that position.[109] Therefore there is a disputed question of fact as to Defendants' reasonable beliefs regarding the law, which is unsuitable for determination at this stage of the litigation.

Defendants further claim they are entitled to qualified immunity under the "extraordinary circumstances" exception because of their reliance on the statute that expressly permits municipalities to penalize criminal misdemeanors like the one at issue.[110] Again Plaintiff's Complaint specifically refutes this justification, citing other statutes that clearly militate against this finding, including the jurisdictional statute limiting municipal court jurisdiction to the enforcement of duly adopted regulations.[111] At best, the question of whether or not Defendants reasonably relied on the statute cited presents another question of fact that is inappropriate for consideration at this stage of the litigation.

Finally, Defendants tacitly argue via citation that Plaintiff's Complaint fails to allege facts sufficient to provide appropriate notice to the Defendants.[112]  Based on the abovementioned allegations and other factual averments, the Court finds that Plaintiff's allegations are specific and give adequate notice of who among the Defendants is said to have committed each alleged violation.

---

[109]*See e.g,* Complaint at 10, Docket No. 2 (alleging Defendant Woodruff informed Defendant that ODEQ was initiating charges, rather than Town).

[110]*See* Brief on Motion to Dismiss II at 14, Docket No. 16.

[111]Complaint at 7, Docket No. 2. *See also* Response II at 7, Docket No. 20 (outlining Oklahoma statutes regarding the enactment and publication requirements of municipal ordinances).

[112]*See* Reply II at 3, Docket No. 24 (*quoting Robbins*, 519 F.3d at 1250 ("Therefore, in § 1983 cases, a plaintiff must 'make clear exactly who is alleged to have done what to whom").

For all these reasons, Defendants' invocation of qualified immunity is inappropriate at this juncture and therefore **DENIED**.

**<u>CONCLUSION</u>**

Plaintiff's Complaint is not a nebulous collection of conclusory allegations. Rather it is a 15 page complaint with over seven pages of detailed factual averments outlining the specific, unlawful actions allegedly perpetrated by the Defendants. Although it is not perfect, it generally suffices to give the Defendants notice of the theories under which the claims are made and makes clear the grounds on which the Plaintiff is entitled to relief.[113] For the reasons set forth above, the Motion to Dismiss on Behalf of the Defendants, the Town of Colcord and the Board of Trustees for the Town of Colcord and the Motion to Dismiss on Behalf of Defendants Lenden Woodruff, Don Blagg, Carl Denny, and Henry Creech are **GRANTED IN PART, DENIED IN PART** as discussed above.[114]

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[113]*See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir.2008).

[114]Docket No.'s 13, 15.